[No. 30200. Department Two. December 18, 1947.]

*In the Matter of the Estate of* ANDREW A. RANDALL, JR., *Deceased.*

BERNICE RANDALL, *as Administratrix, Appellant,* v. JOHN P. TOWELL *et al., Respondents and Cross-appellants.*[1]

[1] Reported in 188 P. (2d) 71.

448

R. W. *Greene* and *Leo F. Goodman,* for appellant.

*Sather, Livesey & Kingsbury,* for respondents and cross-appellants.

BEALS, J.—March 20, 1943, Andrew A. Randall, Jr., John P. Towell, Edward J. Hudson, Harry Graham, and A. Razore, all residents of Bellingham, Washington, signed articles of copartnership, the pertinent paragraphs of which read as follows:

"1. That the parties hereby agree that on February 1, 1943, they became and now are partners in business for the purpose and under the terms hereinafter stated.

"2. The firm name of the partnership is 'The Alpine.'

"3. The business to be carried on by the partnership is that of conducting a restaurant, or sub-letting a portion of their premises for the operation of a restaurant, and to sell tobaccos, cigars, cigarettes, candies, and to operate a beer and wine tavern and to operate card rooms and other businesses incident to the foregoing.

"4. The place at which the partnership business is to be carried on is the City of Bellingham, State of Washington.

"5. The term for which the partnership is organized is for an indefinite period which commenced February 1, 1943.

"6. Each partner has invested an equal amount of cash

toward the capital of said partnership, and the partners are to share in the profits and losses of the business in the same proportion.

"7. Each of the partners, except A. Razore, is to give his time and attention to the business, and all partners are to use their best endeavors to promote the interests of the same.

"8. Books of account of the transactions of the partnership shall be kept at the place of business or other designated location, and shall be at all times open to inspection by any partner. Each partner shall cause to be entered upon said books a just and true account of all of his dealings, receipts and expenditures for and on account of said firm.

"9. In the month of January in each year and at such other times as the partners may desire, a full and complete inventory of stock shall be taken and a complete statement of the condition of the partnership shall be made and an accounting between the partners shall be had, and the profits or losses of the preceding year shall be divided and paid or contributed. However, a reasonable reserve of cash shall be kept on hand for the conduct of the business. Fiscal year shall conform to the calendar. Each of the partners, except A. Razore, shall be permitted to draw from the funds of said firm FORTY-FIVE DOLLARS ($45.00) a week as wages for services performed, and said wages shall be deducted as an expense of the business as other expenses are deducted, in determining the profit or loss of said business. . . .

"13. Upon the withdrawal or upon the death of any partner during the continuance of said partnership, the remaining partners may, if they so desire, continue the business and they shall have the right to purchase the interest of such partner in the business, assets and good will, by paying the value of such interest as determined by the last annual inventory and accounting, together with —— Per Cent upon such value since such inventory. Upon such payment, the retiring partner or his representatives shall execute and deliver to the remaining members all necessary conveyances of such interest. The continuing members shall assume all the existing firm obligations, and hold the seller harmless from all liability thereon. The continuing partners may use the former firm name."

For two or three years prior to the signing of the articles of copartnership, the business had been conducted by Mr.

Razore, who, for a four-fifths interest in the business, was to receive, from the profits to be earned, eight thousand dollars. Each of the other partners contributed one hundred dollars in cash, and the four borrowed one thousand dollars as working capital. The five partners were to share equally in the business and profits. The business had been operated by a corporation, but was changed to a partnership at the time the articles of copartnership were signed.

The business prospered, and, in the course of two years or so, the weekly drawing account of each partner, except Razore, was increased to seventy dollars a week. The firm retained a competent accountant to keep the partnership books, prepare the annual inventory, and so forth, referred to in paragraph No. 9 of the articles of copartnership, and an inventory was regularly prepared in January of each year.

Andrew A. Randall, Jr., one of the copartners, died intestate, October 24, 1945, the victim of a hunting accident, leaving surviving him his widow, Bernice Randall, a son a little over two years of age, and a posthumous son who was born December 20, 1945. Mrs. Randall was appointed administratrix of Mr. Randall's estate, November 5, 1945.

A few days after Mr. Randall's death, his widow's mother, Mrs. Berg, called at "The Alpine" and asked Messrs. Hudson and Towell if they would continue Mrs. Randall as a partner in the business. They informed her that they would not, and showed her the articles of copartnership, permitting her to borrow the articles to show to her daughter. A few days later (about two weeks after Mr. Randall's death), three of the remaining partners called on Mrs. Randall to discuss the situation with her, informing her that they would, pursuant to the articles of copartnership, exercise their right to purchase Mr. Randall's interest. The conversation was, naturally, rather brief. Mrs. Randall had employed an attorney, who was not present during the conversation. Mrs. Randall testified that she asked if she would be included as a partner in the business, to which they answered in the negative. She further testified:

"They told me I didn't have anything to worry about; that they would see everything was taken care of and they would do everything that was right and that was fair, and I told them I didn't expect to get any more than what was legally mine."

Nothing was said concerning the amount which would be paid Mrs. Randall on account of her husband's interest in the partnership. Mrs. Randall testified that she clearly understood that the surviving partners were standing upon their right, under the partnership agreement, to take over Mr. Randall's interest. She further testified that she was aware that the only question to be adjusted by the parties was the amount which she should receive from the surviving partners.

No application for administration of the partnership assets having been made by the surviving partners, April 6, 1946, Mrs. Randall was appointed administratrix of the partnership estate, and, June 27, 1946, the surviving partners filed, in the matter of the estate of Andrew A. Randall, Jr., their petition to purchase the interest of the estate of the deceased partner in the business, setting forth in their petition paragraphs Nos. 8, 9, and 13 of the articles of copartnership, set forth above. The petition further alleged that, according to the annual inventory and accounting prepared during the month of January, 1945, the value of the business assets and good will of the copartnership was $16,306.10; that the value of the same items, as determined by an inventory as of October 24, 1945, the day of Mr. Randall's death, was $17,060.97; that the surviving partners desired to purchase the interest of the deceased partner for one fifth of the value of the business, as determined by the larger of the two inventories referred to above, and that they offered to pay the administratrix one fifth of the amount of the larger inventory, less advancements previously made to her.

The partners offered to pay the administratrix $3,413.60, alleged, in their petition, to be the value of the one-fifth interest in the business owned by the estate, less sums

which had been advanced to Mrs. Randall soon after her husband's death.

The administratrix answered the petition, admitting that Mr. Randall had signed the articles of copartnership but denying the allegations in the petition concerning the value of the estate's share of the business, and alleging that neither the good will of the business nor the value of the liquor license was ever inventoried or entered on the books, and that the value of the partnership assets, October 24, 1945, was at least seventy-five thousand dollars. The answer further alleged that the estate's interest in the business was fifteen thousand dollars.

It was affirmatively alleged in the answer that the business owned a ten-year lease, from January, 1945, covering the premises occupied by "The Alpine"; that, in the partnership estate, of which Mrs. Randall was administratrix, the good will of the business had been appraised at forty thousand dollars and the entire assets appraised, as of the same date, at $62,059.74. It was further affirmatively alleged that the good will of the business and the liquor license were never placed upon the partnership books as items of value; that these were the chief assets of the business; and that the surviving partners had not accounted to the administratrix for any profits arising from the business since Mr. Randall's death.

The administratrix prayed that the court proceed in accordance with law in regard to the sale of the interest of the estate in the business or that the administratrix be directed to proceed with the administration of the partnership assets.

A similar petition by way of intervention was filed by the guardian *ad litem* of Mrs. Randall's two minor children.

Mrs. Randall moved for leave to file an amended answer, in which the administratrix alleged that the partnership's auditor had never prepared any annual inventory or accounting; that the actual value of the good will, liquor license, and lease owned by the partnership was at least $105,000, and that the contention of the surviving partners,

as above set forth, amounted to a fraud upon Mrs. Randall and her minor children. The court denied the motion for leave to amend.

The matter came on regularly for trial before the court upon the pleadings above outlined. Witnesses testified at considerable length, and both parties proposed findings of fact and conclusions of law. The trial court rejected all the tendered findings and prepared its own findings of fact.

The court found that the articles of copartnership, referred to above, had been executed by the parties, quoting paragraphs Nos. 8, 9, and 13. The court then found the following facts: That Mr. Randall died; that, within two weeks thereafter, the surviving partners informed Mr. Randall's widow, the administratrix, that they desired to purchase the interest of the deceased partner and that they were willing to pay therefor, to the administratrix, an amount to be determined according to the provisions of the partnership agreement, and that the administratrix expressed her desire to receive only "such sum as she was legally entitled to." Findings Nos. 3 and 4, made by the trial court, read as follows:

Finding No. 3: "That at the time of the death of said Andrew A. Randall, Jr., his wife was pregnant and a child was expected in November, 1945, and because of her physical condition, neither she nor the surviving partners desired to effect any immediate settlement."

Finding No. 4: "That no definite offer was made by the surviving partners to the representatives of the estate of such deceased partner and that the interest of said deceased partner has continued as part of the assets of said business and is entitled to its proportionate share of the earnings thereof until September 24, 1946, which the court finds to be $3432.55."

The court also found that the administratrix had received, from the surviving partners, the sum of $384, by way of advancements, on the purchase price of the Randall interest in the business.

The trial court entered the following conclusion of law:

"That in order to obtain the interest of said deceased partner, said surviving partners must pay said estate

$3261.22 plus one-fifth of the net earnings of said partnership from the date of the death of said deceased until September 24, 1946, or $3432.55, making a total sum of $6693.77 less $384.00 mentioned in Finding V above."

Judgment was entered declaring "that the value of the interest of said deceased partner on September 24, 1946, was $6,693.77," and that the administratrix of the estate should execute a proper conveyance of that interest to the surviving partners upon receipt of the sum referred to, less $384.

On the day of the filing of the judgment, the surviving partners noted their written exception to the judgment but, by way of compromise, reserving the right to appeal from the judgment if the administratrix took an appeal therefrom, offered to terminate the litigation by paying to the administratrix the sum of $6,309.77, the amount that the trial court adjudged that the administratrix should receive from the surviving partners for a conveyance of the estate's interest in the partnership.

A few days later, the administratrix moved for an order permitting her to appeal to this court from the judgment referred to above, and, November 15, 1946, the court signed an order permitting such appeal. Thereafter, the administratrix gave notice of appeal to this court from the judgment which the trial court rendered, and the surviving partners have cross-appealed from so much of the judgment as found that the surviving partners were required to pay the estate of Andrew A. Randall, Jr., deceased, any amount in excess of $3,261.22, with interest.

Appellant assigns error upon the refusal of the trial court to admit testimony concerning the value of the good will of the partnership business, concerning the value of the liquor license which it owned, concerning the value of the lease, and of other alleged partnership property. Appellant also assigns error upon the admission of testimony by one of the surviving partners, Ed Hudson, concerning his conversations with the deceased; upon that portion of the judgment permitting the surviving partners to purchase the interest

of the deceased in the partnership business for $6,309.77, and upon the refusal of the trial court to find that the surviving partners should pay at least twenty-eight thousand dollars for that interest.

Appellant also assigns error upon the refusal of the trial court to permit an amendment to appellant's pleading, and upon the failure of the trial court to include in the judgment a share of the profits of the business from October 27 to December 31, 1945. And, finally, appellant assigns error upon the court's ruling deducting partnership obligations from the amount ordered to be paid to appellant.

Cross-appellants, who will herein be referred to as respondents, assign error upon the court's finding that appellant was entitled to a share of the profits earned by the business after Mr. Randall's death, and that appellant was entitled to share in the profits earned by the business until September 24, 1946, and state that the trial court erred "in adhering to the profit as shown by the books of the partnership in determining the amount to be paid appellant as the estate's share of the profits."

Appellant's appeal presents the question of the method to be followed in determining the amount to be paid by respondents to appellant for the 'interest in the business conducted by the partnership which belonged to Andrew A. Randall, Jr., and, after his death, became an asset of his estate, of which appellant is administratrix.

The trial court held that the value of the share of the business owned by the deceased should be determined in accordance with paragraph No. 13 of the articles of copartnership, and that respondents were entitled to a conveyance from appellant, as administratrix · of her late husband's estate, of the estate's interest in the business upon paying one fifth of the amount shown by "the last annual inventory and accounting."

Appellant contends that, because no valuation of the good will of the business was carried on the partnership books, a reasonable value should be placed upon such good will and added to the value shown by the annual inventory and

accounting, and that additional values should be placed upon the lease owned by the copartnership and upon the liquor license granted to the partnership.

Appellant argues that, because paragraph No. 13 of the articles of copartnership refers to the purchase, by the remaining partners, of the interest of the deceased partner "in the business, assets and good will," the value of each of these assets must be separately estimated, and that the value of the interest of Mr. Randall's estate,. for the purpose of fixing the amount to be paid by respondents, cannot be determined "by the last annual inventory and accounting," as prepared for the partnership by the accountant.

Carroll Lindell, an employee of "Carl Zaremba's Accounting Service," kept the partnership books and accounts after 1943. Mr. Lindell testified as a witness for respondents, stating that he kept the accounts, including a day book, a general journal, a ledger, and financial reports, and that the value of the partnership assets was shown on the ledger. When Mr. Lindell commenced this accounting service for the partnership, he set up new books, taking over from the books kept by the former accountant the last trial balance shown and the values of the assets, after he had audited them, making what corrections he thought necessary. The witness testified that, at this time, he discussed with the partners the question of good will, and that neither Mr. Randall nor any other partner requested that any good will pertaining to the business should be shown as an asset. The witness testified that he had suggested that no entry concerning good will should be made on the books, the accounts showing that the partners had never acquired any good will, and that none of the partners ever suggested that the books carry any valuation of the lease or of the liquor license.

Respondents contend that the amount to be paid by them to appellant administratrix is determined by the articles of copartnership as a matter of accomplished contract, as agreed by paragraph No. 13 of the articles.

It is established law that copartners may, by contract between themselves, agree upon the method whereby

a surviving partner or partners shall have the right to purchase the interest of a deceased or withdrawing partner, at a price to be determined by a method agreed upon by contract between the partners. In 40 Am. Jur. 346, Partnership, § 310, appears the following text:

"The right of partners to make agreements whereby the survivor shall have the right or option to purchase his deceased partner's interest in the firm on stated terms and conditions is unquestioned, and such agreements have been uniformly upheld and enforced by the courts, when made bona fide and supported by sufficient legal consideration."

In the case of *Vance v. Ingram,* 16 Wn. (2d) 399, 133 P. (2d) 938, this court, in construing a contract between two partners, held that the written agreement, fixing the price to be paid upon the exercise by one partner of his option to purchase the interest of the other partner for a fixed amount, controlled.

In the case of *Baker v. Wides' Executor,* 299 Ky. 414, 185 S. W. (2d) 699, the court of appeals of Kentucky said:

"It is not doubted that partners may make a legal agreement whereby the survivor shall have the preferential right or option to purchase his deceased partner's interest in the firm upon stipulated terms, and may enforce his option provided he acts in good faith, deals fairly, and makes full disclosure to representatives of the deceased partner."

In the case of *Kavanaugh v. Johnson,* 290 Mass. 587, 195 N. E. 797, the questions presented to the court concerned an adjustment between a surviving partner and a personal representative of the deceased partner. There had been a written agreement between the partners as to the method to be followed in case of the death of a partner. The chief question before the court concerned the proceeds of insurance policies upon the life of the deceased partner. The articles of copartnership provided that the partnership assets should be ascertained by a physical inventory; and the court held that, in the absence of the agreement, the plaintiff, personal representative of the deceased partner, would have been entitled to have the good will of the business, which was not included in the physical assets, esti-

mated as an asset of the partnership. Continuing, the court said that, while the good will may have been a valuable part of the assets, under the provision of the agreement that the partnership assets should be ascertained by a "physical inventory," the plaintiff was precluded from requiring that the value of the good will be deducted from the amount of the partnership obligations. This, of course, amounted to a holding that the representative of the deceased partner was not entitled to any claim on account of good will, because of the provision in the articles of copartnership.

In the case at bar, appellant does not contend that respondents did not seasonably give notice of their intention to avail themselves of their right, under the articles of copartnership, to purchase the Randall interest in the business, in accordance with paragraph No. 13 of the articles. When respondents advised appellant that they elected to exercise their option to purchase the estate's interest in the copartnership, any subsequent disagreement between the parties concerned as to the amount to be paid for such interest did not prevent respondents' election to purchase from becoming effective, they having, at all times, been ready and willing to pay the amount which, according to their theory, was due to appellant. The matter was kept open by negotiations between the parties.

Partners have the right, in the absence of fraud or overreaching, to make a valid and binding contract among themselves for the purchase, by the remaining partners, of the interest of a deceased or withdrawing partner. In the absence of fraud, the fact that they may have agreed that such an interest may be purchased for a sum less (or more) than the actual value of the interest, at some subsequent date, does not render the partnership contract subject to attack merely because the interest of the deceased or withdrawing partner, at the time of his death or withdrawal, may be worth more than the amount which the partners agreed should be the purchase price thereof.

In the case at bar, there is not a suggestion of unfairness in the partnership agreement. Apparently, at the

time the articles were signed, no partner expected to voluntarily withdraw from the business, and, naturally, no partner anticipated either his own death or the death of any other partner within any short period of time. If, under such circumstances, in the absence of fraud or overreaching, the partners agree upon a definite sum of money to be paid upon the withdrawal of a partner, the contract may be enforced, regardless of the value of the interest in the business which would be transferred upon the exercise by the survivors of the option in their favor.

Appellant argues that, because there exists a relationship of trust and confidence between partners, it follows that a similar relation exists in the case at bar between the surviving partners and appellant, as administratrix of her husband's estate, and that a fraud will be committed against appellant if respondents may procure the estate's interest in the partnership for less than its actual value. Unless it should be found that fraud inhered in the original contract, later results which might follow the carrying out of that contract are unimportant, and, in the case at bar, in the light of the evidence, no possible fraud or even unfairness can be attributed to the execution of the articles of copartnership. The agreement operated equally as to all parties concerned, and, apparently, all partners were, at all times, entirely satisfied therewith.

The partners engaged in "business" for the purposes of the partnership. In paragraph No. 13 of the articles, they agreed upon a method for accomplishing the transfer of the interest of a withdrawing partner in "the business, assets and good will," thereby explaining exactly what they intended should be included in the transfer. They definitely, by the articles of copartnership, fixed the amount to be paid as consideration for the transfer of such interest.

It clearly appears, from the evidence, that the partners agreed that no valuation for good will should be set up on the partnership books, and they acquiesced in the accomplished practice that the liquor license and the lease which they owned should not be carried on the books at any fixed valuation. This course of conduct was fair to all

the partners, as each one, while living, had an equal opportunity to withdraw from the business, and, apparently, no partner was more likely to die than was any other partner.

■ It is usually held that the good will of a business is *prima facie* included in the assets, property, or effects.

In Lindley on Partnership (8th ed.) 517, after considering some early cases, the text continues, stating that the earlier cases

". . . are not in accordance with the more modern decisions which show that the good-will is *prima facie* included in the 'assets,' 'property,' 'effects,' or 'stock' of the partnership, and must be paid for accordingly, and it is apprehended that in some cases good-will might even be held to be included in the partnership 'premises'. But an agreement to pay out a retiring partner the value of his share as shown by the last annual account does not entitle him to have the good-will valued if it is not, and ought not to have been, included in that account."

In the case at bar, the evidence shows beyond question that the partners agreed that good will should not be carried as a separate asset on the partnership books.

In Story on Partnership (7th ed.) 540, § 349, appears the following:

"In respect to the mode of taking the accounts between the partners, that must depend upon circumstances. If the partners have, by the articles of partnership, provided a particular mode, that will be held to furnish the true rule for the adjustment of the concern and the winding up of all the affairs thereof, unless the partners, by their own acts and conduct, have waived or abandoned it; for, in that event, the stipulation in the articles, as to the mode, will be held a nullity."

In 47 C. J. 1083, Partnership, § 685, the rule is laid down as follows:

"The surviving partners are, therefore, ordinarily under a duty to account to the representatives of a deceased partner for his proportionate share in the good will, although they may be relieved from such duty by an agreement fixing a basis of adjustment in case of death of a partner and showing that good will is not to be taken into account, or by the peculiar circumstances of a particular case."

In support of the text, in note 17[a] appears the following:

"Where the partnership agreement provides that, on the death of a partner, his executors, administrators, and assigns shall be entitled to such sum of money as, on the last general annual account, his share of the capital and property of the partnership amounts to, and the accounts so taken are only for the purpose of ascertaining profits, and hence good will is not included therein, the representatives of the deceased partner are not entitled to have any sum for decedent's share of the good will included in the amount which they are to receive. *Scott v. Scott,* 89 L. T. Rep. N. S. 582. To like effect *Hunter v. Dowling,* [1895] 2 Ch. 223."

To the same effect is 40 Am. Jur. 346, Partnership, § 310.

The supreme court of New Hampshire, in the case of *Normand v. Normand,* 90 N. H. 548, 11 A. (2d) 816, said:

"It is the general rule that the death of a partner dissolves the firm and vests in the surviving partner or partners the possession and management of the partnership property for the purpose of settling the firm's affairs. *Cotton v. Stevens,* 79 N. H. 224. It is not uncommon, however, for articles of copartnership to provide the method by which the partnership affairs shall be settled, and when such provisions exist they must prevail. Parsons, Partnership (4th *ed.*), s. 344.

"Partners 'may agree that upon the death of any of their number, the survivors shall become the absolute owners of the firm assets, with a personal liability to pay the deceased partner's representatives for his interest.' Burdick, Partnership (3d *ed.*), 148. In such a situation the right of the representatives is to have the value of the deceased partner's interest 'ascertained in the method prescribed by the agreement, and paid by the survivors in the stipulated manner.' "

The rule stated works both ways, as was noted in the opinion in the case of *Sands v. Miner,* 16 App. Div. 347, 44 N. Y. Supp. 894 (affirmed, without opinion, in 160 N. Y. 693, 55 N. E. 1100):

"Upon the death of Sands the defendant had the right to elect either to wind up the business, in which case he would only be obliged to account for the actual value of the property, and to pay over to the administratrix the one-half

portion thereof, or to do what he claims to have done, and what the referee held with him he had a right to do, namely, to take the business and place a value upon it in accordance with the terms of the partnership contract. When he so elected he took a running business, and, in fixing the price which he should pay for Sands' interest, he was authorized to omit the value of the lease or good will which he thus acquired without paying anything therefor. But, as an offset to that, the express provision of the contract was that he was to fix the value of the interest of his deceased partner 'according as the same may appear from the books of the said business.' "

This was a case in which the surviving partner claimed that the valuations as shown by the partnership books were too high. The court held, however, that:

"Under his election, however, the defendant was not at liberty to acquire the interest of Sands in the business upon payment of the actual value fixed by himself upon the property which he took over, excluding therefrom the value of the lease and good will. The referee was correct, therefore, in holding that, in the absence of fraud or imposition of any kind, the defendant, on taking over the business, was obliged, according to his contract, to pay, not the actual value, but the book value for the interest of his deceased partner."

The case of *Lowenstein v. Schiffer*, 38 App. Div. 178, 56 N. Y. Supp. 674, is of interest in this connection.

In the case of *Kaufmann v. Kaufmann*, 222 Pa. 58, 70 Atl. 956, the supreme court of Pennsylvania considered a question very similar to that now under discussion. The partners had agreed upon the amount to be paid by surviving partners for the interest of a deceased member, the payment to be a sum equal to his share of the net assets of the firm at the inventory last preceding the death, less amounts drawn, and so forth. The surviving partners desired to purchase upon the agreed basis, but the representatives of the deceased partner claimed that the amount offered was insufficient because the good will of the firm had largely increased between the date of the agreement and the death of the partner. Concerning this matter, the court said:

"The thirteenth clause of the agreement is so plain that it would be the work of supererogation to demonstrate that, upon the death of Jacob, his one-fourth interest in the firm vested in the survivors, subject to their paying for the same a sum to be ascertained in the mode fixed by the parties. This clause was as fair to each of the four parties as it was to the other three, and we repeat as to it what we said of another agreement between partners, stipulating that, on the death of one the survivor should have the right to purchase his interest in the business at a valuation provided for by them in their agreement: 'It was a value fixed irrespectively of the actual value, which would change from year to year, and which they considered it just that the survivor should pay and the estate of his deceased partner receive. Neither could know to whom the option to purchase would fall; and if, during the running of the agreement, because of large additions or deductions, the price might become inequitable, either party had the remedy in his own hands, as without his assent they could not be made. . . . We see no want of equity in the agreement, nor any hardship to result from its performance which should lead a chancellor to deny the prayer for specific performance. There was no inequality of terms; it applied to both alike, and the advantage to be gained by the survivor was not more certain than that which would result to the estate of the deceased:' Rohrbacher's Estate, 168 Pa. 158. . . .

"Though a most elaborate brief has been submitted by the learned counsel for appellants, the case, after all, is within a narrow compass and absolutely free from doubt and difficulty. The agreements, which are self-interpreting, were made by persons sui juris. The one as to the purchase of a deceased partner's interest is not an unusual one, and was fair alike to each of the four partners. If the representatives of Jacob are now disappointed that they cannot get more than the survivors offer them, the law cannot help them, for it was so written by him in his agreement with them."

In the later case of *Kaufmann v. Kaufmann*, 239 Pa. 42, 86 Atl. 634, the court considered further questions which arose in connection with the same subject of litigation. It appeared that the articles of copartnership provided, among many other matters, for the payment of a percentage of the deceased partner's interest in the business for his share of the good will of the firm. It was contended by the personal representatives of the deceased partner that certain valu-

able leaseholds belonging to the partnership were not included in the inventory, and that additional payment was due from the surviving partners. The court held that the enhanced value of the leaseholds, which did not appear on any inventory of the partnership property, was included in the share of the good will of the business owned by the deceased partner, payment for which was agreed upon, in the articles, at a fixed percentage of the deceased partner's interest, determined by the procedure stated in the articles.

See, also, *Gaut v. Reed*, 24 Tex. 46; *Rankin v. Newman*, 114 Cal. 635, 46 Pac. 742; *Coventry v. Barclay*, 3 De G. J. & S. 320, 46 Eng. Rep. R. 659.

In the case at bar, by paragraph No. 13 of the articles, the good will of the business was expressly referred to as passing to the surviving partners upon payment of the deceased partner's proportion of the last annual inventory. As the articles of copartnership before us do not provide for the taking of an inventory and accounting to be made upon the death or withdrawal of one of the partners, but, on the contrary, refer specifically to "the last annual inventory and accounting," the trial court properly computed the amount which respondents should pay as based upon the inventory in question.

The fact that, in the case of *Kaufmann v. Kaufmann*, 239 Pa. 42, 86 Atl. 634, the articles of copartnership specifically fixed an amount to be paid for good will, while in the case at bar good will was included with the interest of the deceased partner which should pass upon compliance by the surviving partners with the provisions of the articles, is an immaterial difference in the facts and requires the application of no different principle of law.

Respondents' offer to pay a slightly larger amount, computed upon the basis of the inventory taken as of the date of Mr. Randall's death, was not accepted by appellant, and was properly disregarded by the court in entering the judgment appealed from.

The trial court correctly held that the entire interest owned in the partnership by Mr. Randall in his lifetime, including the lease, liquor license, and the good will of the

business, should pass to respondents upon payment by them to appellant as administratrix of her husband's estate, of the sum of $3,261.22, less $384 which respondents had already advanced to appellant.

The trial court did not err in refusing appellant leave to file an amendment to her answer to respondents' petition, and appellant's assignment of error based upon that ruling is without merit.

■ Appellant also assigns error upon the ruling of the trial court directing that the partnership obligations be deducted from the total amount of the inventory, prior to determining the amount to be paid by respondents to appellant for the estate's interest in the business. This assignment of error is without merit. The inventory and accounting clearly showed, as of December 31, 1944, the gross assets of the partnership, together with the liabilities, and the balance to the credit of the partnership. In determining the "value" of each partner's interest in the business at a particular time, the liabilities, as of that date, must be taken into account, as well as the assets.

In reaching our conclusion, as above set forth, we have disregarded the testimony of respondent Hudson as to conversations between himself and Mr. Randall concerning the articles of copartnership and kindred matters. Appellant objected to Mr. Hudson's testimony as to such conversations, upon the ground that the same was inadmissible testimony by an interested party concerning a conversation with a deceased person, whose estate was involved in the litigation. While expressing doubt as to the admissibility of the testimony, the trial court overruled appellant's objection, and we assume, without deciding, that the testimony should not have been admitted.

We shall now consider respondents' cross-appeal, in connection with which respondents assign error upon the court's ruling that appellant was entitled to a share of the profits of the business which accrued after Mr. Randall's death, and in taking the earned profits of the business up to September 24, 1946, as the basis for fixing the amount to be paid by respondents to appellant. The parties stipulated that, during

the month of December, 1945, a copy of the inventory and accounting of the partnership business was delivered to appellant's counsel, and that it was understood between appellant's and respondents' counsel that respondents would pay appellant the amount due her, pursuant to that inventory and accounting, at any time she would be willing to accept that sum as payment in full for the estate's interest in the business. At this time, nothing was said between the parties concerning payment to appellant of any share of the profits which had been earned by the business up to that date. It is evident that respondents had somewhat delayed the negotiations with appellant because of her condition, and the birth of her child, which occurred December 20, 1945.

Appellant did not, thereafter, accept respondents' offer, but refused the same, demanding payment of a much larger amount. Appellant is now in no position to contend that respondents should have included in their offer a willingness to pay to appellant a share of the profits up to the date in December when the definite offer, above referred to, was made. It may be observed that, after the entry of the judgment appealed from, appellant refused to accept respondents' offer to pay her $6,309.77, as noted above.

Respondents apparently concede that appellant is entitled to share in the profits of the partnership business up to the end of December, 1945. The estate of Andrew A. Randall, Jr., represented by appellant, should receive its proportion of the profits which accrued to the partnership up to a date in December, 1945, to be fixed by the trial court.

The rule is stated in 40 Am. Jur. 388, Partnership, § 368, as follows:

"It may be laid down as a general rule that, in the absence of special circumstances and subject to just allowances and deductions, where profits are made by a partner subsequent to death or dissolution, through employment of the firm assets or in continuation of the business of the firm, he is accountable therefor to his copartner or to the latter's legal representatives."

Appellant's right to receive such profits terminated on the date referred to, when she received from respondents a definite offer to purchase the estate's interest, as above set forth. Her refusal to accept a valid offer terminates appellant's right to share further in any profits earned by the business. *Appeal of Harbster*, 125 Pa. 1, 17 Atl. 204; *Sechrest v. Sechrest*, 248 Wis. 516, 22 N. W. (2d) 594.

The record shows that respondents offered to pay interest upon the amount due appellant for the estate's share of the business, at the rate of six per cent per annum. Whether any such interest will be paid and, if so, between what dates, will be determined by the trial court.

The trial court erred in adjudging that respondents were obligated to pay, in addition to the amount referred to above, one fifth of the profits earned by the partnership business up to September 24 (as found by the court) or September 23 (as agreed by the parties), 1946.

On appellant's appeal, the judgment and decree before us is affirmed.

On respondents' appeal, the judgment is reversed and the cause remanded to the superior court with instructions to enter a decree adjudging that the value of the interest of Andrew A. Randall, Jr., deceased, in the partnership of which he was a member, that interest being now the property of his estate, of which appellant is administratrix, was, at the date of his death, in the amount of $3,261.22; that respondents have paid appellant, as advances on account, the sum of $384, for which amount they shall be allowed credit, and, in addition to the net sum above referred to, respondents shall pay to appellant such sum as the trial court may find equals one fifth of the net profits earned by the partnership up to such date in December, 1945, as the trial court may fix as the proper date to which appellant, as administratrix, is entitled to receive such share of the profits.

The trial court may also allow appellant interest, at the rate of six per cent per annum, upon the sum to be paid by respondents for the conveyance by the estate of Andrew A. Randall, Jr., deceased, of the estate's interest in the partnership. Upon the payment by respondents of a sum equal

to the aggregate amount of all the items hereinabove referred to, appellant, as administratrix of the estate of her deceased husband, shall make and deliver to respondents a proper conveyance of the interest pertaining to the estate of Andrew A. Randall, Jr., deceased, in and to the partnership business heretofore conducted by respondents and the late Andrew A. Randall, Jr., as copartners.

The cause will be remanded to the superior court to proceed in accordance with the directions herein set forth.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.

February 4, 1948. Petition for rehearing denied.