No. 10,071.

VALENTINE ET AL. *v.* WYSOR.

PARTNERSHIP.—*Surviving Partner.—Firm Property.—Control of.*—A surviving partner has the right to the control and possession of the property of the firm, and may dispose of it in order to adjust the partnership accounts, and is only liable to the representatives of the deceased partner for what remains in his hands after the partnership affairs are settled.

SAME.—*Heirs.—Rights of.—Payment of Debts.—Surplus.*—The rights of the heirs of a deceased partner are subject to the adjustment of all claims between the partners, and attach only to the surplus which remains when the partnership debts are all paid, and the affairs of the firm wound up. Until all the debts are paid the rights of the heirs do not attach.

SAME.—*Surviving Partner.—Accounting by.— What Heirs Must Show.*—Where it appears that the surviving partner has paid all the partnership debts, and that the estate of the deceased partner is indebted to him, it is essential to the right of the heirs to call him to account that they make it appear that he has in his hands partnership property in excess of the amount required to reimburse himself.

SAME.—*Custody of Assets.—Mismanagement.*—A surviving partner is entitled to the custody and management of the assets, unless it be shown that he is committing waste, or otherwise mismanaging the affairs of the firm, and is only liable to the heirs or representatives of the deceased partner for what remains after everything is settled up.

SAME.—*Testamentary Power.—Executors.—Discretion of.*—Where the powers conferred by a will include the power to settle, adjust, and compromise all debts owing by the testator, and to make settlements with his former partners, and each of them, without authority from any court, and to sell and convey, either at public or private sale, any or all of the testator's real estate on such terms as to them shall seem best, in order to pay and satisfy debts against his estate, the purpose of the testator plainly appears to invest his executors with power to make compromises and settlements at their discretion, and to sell and convey his real and personal estate according to their best judgment.

SAME.—*Sale.—Notice.*—A sale made by the executors under such powers, without giving notice of the time, place, and terms of sale, and without including the value of the real estate in the bond given by them when they qualified, does not render the conveyance invalid.

SAME.—*Testator's Interest.—Conveyance to Surviving Partner.—Impeachment*

*of.—Fraud.*—A conveyance by the executors in pursuance of the terms of such will to the surviving partner of the interest of the testator in the firm property, in consideration of the payment by the surviving partner of the firm debts, and of certain individual debts of the deceased partner, and a conveyance to the widow of certain real estate, will not be disturbed by a court of equity until it is impeached as fraudulent or unfair; or unless collusion between the executors and surviving partner is shown.

SAME.—*Deceased Partner.—Interest of.—Purchase from Personal Representatives.*—While a surviving partner may not become a purchaser of the firm property at his own sale, he is not disqualified from becoming the purchaser of the interest of his deceased partner in the partnership business from his legal representatives.

SAME.—*Accounting between Executors and Surviving Partner.—Acquiescence in.—Court of Equity.*—A settlement and accounting between the executors and the surviving partner having been had, a court of equity, after an acquiescence in the settlement for fourteen years, unexplained by circumstances, will not decree the opening up of the account, although it appears that the settlement has been irregularly made.

From the Delaware Circuit Court.

*O. T. Boaz, W. W. Herod* and *F. Winter,* for appellants. *W. Brotherton* and *C. E. Shipley,* for appellee.

MITCHELL, C. J.—This suit was instituted by Emily E. Valentine, Martha M. Little, Parmelia R. Gilbert, Mary E. Wood and Florence T. Horne, the children and heirs at law of John Jack, late of Delaware county, deceased, against Jacob H. Wysor.

The questions for decision arise upon the complaint, from which we summarize the following facts : John Jack, father of the plaintiffs below, died testate in the month of October, 1859. At and before that date he was in partnership with the defendant, Jacob H. Wysor, the two composing the firm of Wysor & Jack. The testator was also a member of the firm of Wysor, Jack & Kline, which was composed of the above named, Jacob H. Wysor, John Jack, and William B. Kline. This last-named firm was engaged in the milling business, and owned a flouring mill, together with sixty-five acres of land adjacent, each member being the owner of an

undivided one-third of the business and property. The business of the firm of Wysor, Jack & Kline was in no way connected with that of Wysor & Jack, the last-named firm being the owner of three hundred and eighty acres of land, which constituted part of the firm assets, in which each partner had an equal interest. The character of the business of Wysor & Jack does not distinctly appear, but the land owned by them is treated by both parties as partnership property.

By the first, second and third clauses of his will the testator appointed executors to carry the will into execution, made provision for his wife, by giving her a life-estate in his real estate, and expressed a desire that she should be admitted into the firm and continue the business as a partner with Wysor and Kline, his former associates in the milling business.

The fourth and fifth clauses of his will read as follows:

"4th. I will and direct, that my said executors, and, in case of the death or failure to serve of either, the survivor of them, shall adjust, settle and compromise any and all debts, claims or demands, due to or from me, according to the best of their or his judgment, without any further authority from any court or jurisdiction whatever; and, further, that they shall make settlement with my said partners, and each of them, of the partnership affairs, and of the profits heretofore arising therefrom, together with any matters of dealing between myself and them, or either of them, in manner according to his or their judgment, without any further authority from any court whatever.

"5th. I do further will and direct that my said executors, or in case of the failure from any cause of either to serve, then the remaining executor, shall sell and convey so much of my personal or real estate, at either public or private sale, with or without appraisement, on such terms, at such place, and in such manner as to him or them shall seem best, as

may be necessary to pay and satisfy all my just debts, reserving, however, to my said wife the title and possession of the house and grounds where I now live, otherwise selling such parcels, the sale of which will least injure the remainder."

As to the remainder of his property, after the termination of the life-estate of the widow, the testator died intestate. After the testator died Wysor, as surviving partner of the firm of Wysor & Jack, and Wysor and Kline, as surviving partners of Wysor, Jack & Kline, continued in possession of the property of their respective firms until June 23d, 1866, when the executors of the last will of John Jack, assuming to act under the provisions of the fourth and fifth clauses of the will above set out, made a settlement, and entered into an agreement with the defendant Wysor, whereby in consideration that the latter agreed to pay the indebtedness of the firm of Wysor & Jack, and certain debts due from the testator to Wysor, and also to pay his share of all the unpaid indebtedness of Wysor, Jack & Kline, and all other indebtedness of the testator, including the cost of administration, and in addition convey certain property to the widow, and secure to her a one-third interest in the property of Wysor, Jack & Kline free from any debts, the executors and widow agreed to convey to the defendant Wysor all the interest of the testator, excepting certain designated parcels, in the real estate owned by the firm of Wysor & Jack. This agreement was consummated and conveyances were made accordingly by the widow and executors in June, 1866, and it is charged that the defendant claims, in virtue of these conveyances, to be the sole owner of the property, and denies the title of the plaintiffs. These conveyances stood without question until in February, 1880, when this suit was instituted.

It does not appear from the complaint that there was any disparity between the value of the property conveyed and the amount of debts assumed, or that the debts had not been paid according to the agreement, or that there was any fraud

or collusion between the surviving partner and the executors, or that the latter were in any way overreached.

It is claimed, however, that the power of sale contained in the will did not extend to the partnership real estate, except that specifically mentioned therein ; that if it did, it only authorized the executors to sell the testator's interest in so much thereof as remained after full payment of the partnership debts. Moreover, it is claimed that even if the executors had authority to sell, the transaction as disclosed by the complaint was not a sale within the meaning of the language employed in the will, and that because the sale was made by the executors without having given notice of the time, place and terms of sale, and without having included the value of the real estate in the bond given by them when they qualified, the conveyance was invalid and void. It is claimed, too, that Wysor, being the surviving partner of the firm of Wysor & Jack, was a trustee of the partnership property, under a duty to the heirs and creditors, and that he was, therefore, incompetent to purchase and receive a conveyance from the executors. For all these reasons, it is urged that the conveyance is illegal and ought to be set aside, and that an accounting of the affairs of the firm of Wysor & Jack should be had, the appellants alleging their readiness to pay whatever may be found due the defendant Wysor.

While it is undoubtedly true, as a general rule, that an action to compel a surviving partner to account can only be maintained by the personal representative of the deceased partner, yet circumstances may appear which create an exception to the general rule and make it proper that a court of equity should entertain an action on behalf of the heirs. Where it is shown that there is collusion between the surviving partner and the executor, the latter refusing to compel an accounting by the former, or where there has been such dealing between the two as renders it probable that the executor will not make a *bona fide* effort to secure an ac-

counting, or other like circumstances appear, it has been held that the heirs may maintain the action.. In the absence of special circumstances, heirs have no *locus standi* against the surviving partner.    2 Lindley Part. 494 ; *Harrison* v. *Righter*, 3 Stock. 389 ; *Hyer* v. *Burdett*, 1 Edw. 325. Assuming, without deciding, that the facts as pleaded in the present case make it apparent that the executors have placed themselves in such an attitude towards the surviving partner and the transaction sought to be set aside, as to bring the case within the exception, it becomes pertinent to inquire whether or not the appellants as heirs show any interest in the property of the late firm of Wysor & Jack upon which to predicate an action.

If the executors had no power under the will to sell and convey, or the surviving partner was incompetent to purchase or receive a conveyance, or if, for any other of the reasons urged, the transaction between the executors and the surviving partner was illegal, and the conveyance void, then the property remained in the possession and under the qualified ownership of the surviving partner, unaffected by what transpired.    It is familiar law, that a surviving partner has the right to the control and possession of the property of the firm, and that he may dispose of it in order to adjust the partnership accounts, and is only liable to the representatives of the deceased partner for what remains in his hands after the partnership affairs are settled ; and there is nothing more thoroughly settled in the law of partnership than that the rights of the heirs of a deceased partner are subject to the adjustment of all claims between the partners, and attach only to the surplus which remains when the partnership debts are all paid, and the affairs of the firm wound up. Until all the debts are paid the rights of the heirs do not attach.    *Grissom* v. *Moore*, 106 Ind. 296, and cases cited ; *Walling* v. *Burgess*, 122 Ind. 299 ; *Deeter* v. *Sellers*, 102 Ind. 458.

The heirs of a deceased partner have no interest as such

in the property of the firm, their only remedy is to compel the surviving partner to account for the surplus after the settlement of all the partnership liabilities, and ordinarily a court of equity will not entertain jurisdiction of the affairs of a partership until by its decree a final adjustment of the business can be effected. *Thompson* v. *Lowe,* 111 Ind. 272, and cases cited; *Scott* v. *Searles,* 13 Miss. 25; *Rossum* v. *Sinker,* 12 Cent. L. J. 202, and note. Now while it appears that the deceased partner was indebted to the firm, and that the firm was indebted on partnership account, and that the surviving partner agreed, in consideration of the conveyance which is assailed, to pay these and other debts for which the testator's estate was liable, and while it may be inferred from the facts alleged in the complaint that the surviving partner has paid all the debts of the firm, except what remains due to himself on the partnership account, it nowhere appears but that the entire interest of the deceased partner would be absorbed in the adjustment of the partnership account with the surviving partner. Having averred facts from which the inference arises that the surviving partner has paid all the partnership debts, and that the estate of the deceased partner is indebted to him, it is essential to the right of the heirs to call him to account, that they make it appear that he has in his hands partnership property in excess of the amount required to reimburse himself. The averments in the complaint wholly fail to do this, and the conclusion is, therefore, unavoidable that the complainants fail to show such an interest in the property as entitles them to invoke the aid of a court of equity.

This conclusion necessarily follows from the application of the rule that a surviving partner is entitled to the custody and management of the assets, unless it be shown that he is committing waste or otherwise mismanaging the affairs of the firm, and is only liable to the heirs or representatives of the deceased partner for what remains after everything is settled up. *Roys* v. *Vilas,* 18 Wis. 179; *Shanks* v. *Klein,* 13 Cent. L.

J. 369 ; *Anderson* v. *Ackerman*, 88 Ind. 481 ; *Cobble* v. *Tomlinson*, 50 Ind. 550.

If, however, it were conceded that it appeared that the partnership assets exceeded in value the amount necessary to adjust the partnership account, it would by no means follow that the appellants could maintain this action. It appears that more than fourteen years before the commencement of this action the executors of the deceased partner on the one hand, acting under the authority conferred by the will, and the surviving partner on the other, consummated a final settlement and adjustment of the partnership account of Wysor & Jack.

The powers conferred by the will are broad and comprehensive, and include the power to settle, adjust, and compromise all debts owing by the testator, and to make settlements with his former partners, and each of them without any authority from any court, and to sell and convey, either at public or private sale, with or without appraisement, any or all of the testator's real estate on such terms as to them shall seem best in order to pay and satisfy debts against his estate. It thus plainly appears that it was the purpose of the testator to invest his executors with power to make compromises and settlements at their discretion, and to sell and convey his real and personal estate according to their best judgment.

The statute in force at the time the sale was made provided, in effect, that where lands were directed to be sold by a will, the sale, as to giving notice, conveying, taking notes and mortgages, return and confirmation, should be conducted as sales by an administrator for the payment of debts, " unless by the terms of the will different directions are given ; but no petition, or notice of the filing thereof, shall be required." 2 R. S. 1876, p. 530.

As was in effect said in *Munson* v. *Cole*, 98 Ind. 502, the land was not directed to be sold by the will ; that was left to the discretion of the executors. But if it had been, the executors were authorized to sell at their own discretion

upon such terms as they might think best, and the authority
thus conferred necessarily operated as " different directions "
from those prescribed by the statute. The conveyance was
not, therefore, invalid because the terms of the statute were
not observed, or on account of any defect in the power of
the executors.

This brings us to inquire whether the surviving partner
occupied such a relation to the property and to those con-
cerned as to disqualify him from purchasing the interest from
the executors of the deceased partner.

It is not to be doubted that a surviving partner is regarded
as a trustee primarily for the creditors of the firm, and sec-
ondarily for the heirs or personal representatives of the de-
ceased partner in all that remains, or fairly ought to remain,
after adjusting the partnership account. Accordingly it has
been correctly laid down that " The surviving partners are
held strictly as trustees; and their conduct in discharging
their trust, is carefully looked after by courts of equity.
Thus, like other trustees, they can not sell the property of
the firm and buy it themselves; nor, as the converse of this,
can they buy from themselves property for the firm. Their
trust being to wind up the concern, their powers are com-
mensurate with the trust. * * Their trust is to wind up the
concern in the best manner for all interested, and, therefore,
without unnecessary delay." Parsons Part., p. 442 ; *Case*
v. *Abeel,* 1 Paige, 393 ; *Sigourney* v. *Munn,* 7 Conn. 11 ; *Jones*
v. *Dexter,* 130 Mass. 380 (39 Am. Rep. 459).

Being in a sense a trustee, the surviving partner can not,
of course, speculate upon the property which the law com-
mits to his custody, solely for his own advantage in disre-
gard of the interest of his *cestuis que trust,* and if he makes
profits out of the trust property, in the course of the ad-
justment of the affairs of the partnership, he is held to ac-
count to those interested for their share. He can not pur-
chase the trust property from himself, no matter whether
the attempt be made by means of a public or private sale.

This is so, not only because his duty as seller, and his interest as purchaser are in irreconcilable conflict, but for the more cogent reason, that it is indispensable to every legal contract of sale and purchase, that there be two contracting parties competent to enter into a binding engagement with each other.    Hence an attempt by a trustee who holds property in trust, whether he be surviving partner, administrator, or whatever his designation, to sell the trust estate to himself is everywhere held to be void.  *Martin* v. *Wyncoop*, 12 Ind. 266; *Hunsucker* v. *Smith*, 49 Ind. 114; *Murphy* v. *Teter*, 56 Ind. 545; *Rochester* v. *Levering*, 104 Ind. 562; *Nelson* v. *Hayner*, 66 Ill. 487.    In the case of a sale thus made or attempted, it can well be said, it is of no avail to show that the trustee acted in good faith.    Such transactions are poisonous in their tendencies, and violative of the principles of public policy.    They are declared void, not for the purpose of affording a remedy against actual mischief, but to prevent the possibility of wrong.    *Potter* v. *Smith*, 36 Ind. 231; *Morgan* v. *Wattles*, 69 Ind. 260.    These principles do not apply or control in the case of a sale made by the personal representative of a deceased partner to a surviving partner.    No good reason can be suggested why a surviving partner should be held legally incompetent and absolutely disqualified from becoming the purchaser of the interest of his deceased partner in the partnership business from his properly authorized legal representative, while very many reasons occur why such transactions, fairly entered into, should not only be upheld, but encouraged.    In addition, the adjudged cases firmly support the right to make such sales.    *Brown* v. *Slee*, 103 U. S. 828; *Baird* v. *Baird*, 1 Dev. & Bat. Eq. 524 (31 Am. Dec. 399); *Chambers* v. *Howell*, 11 Beav. 6; *Roys* v. *Vilas, supra.*

In *Kimball* v. *Lincoln*, 99 Ill. 578, after reiterating the rule that a surviving partner could not become a purchaser of the firm property at his own sale, nor from a co-trustee, the Court said : " But the reason that would forbid a trans-

action of this character has no application to a case where a surviving partner purchases property from the executor or administrator of the deceased partner, and hence the rule which would govern the one case can not control the other." See *Ludlow* v. *Cooper,* 4 Ohio St. 1.

It has thus been seen that the executors had plenary power to make settlement of the partnership account, and to sell and convey the real and personal estate of the testator at their discretion, and that the surviving partner was competent to negotiate a settlement of the affairs of the firm, and to purchase the interest of his deceased partner. It is contended, however, that the power which the will conferred upon the executors was a power to sell the real or personal estate of the testator, and that the power thus conferred was not well executed by the conveyance of the testator's interest in the real estate of the firm, in consideration of the agreement to pay debts, as already indicated. The argument is that the agreement between the executors and the surviving partner was the same in legal effect as an exchange of property, and that a power to sell does not authorize an exchange. *Russell* v. *Russell,* 36 N. Y. 581 ; *Taylor* v. *Galloway,* 1 Ohio, 232 ; *Ringgold* v. *Ringgold,* 1 Har. & Gill. 11 ; *Krug* v. *Whiton,* 15 Wis. 684 ; *City of Cleveland* v. *State Bank, etc.,* 16 Ohio. St. 236.

Conceding that the proposition above stated is correct as a general rule, it can not be made available in the appellants' behalf for two reasons : (1) The power conferred upon the executors comprehended much more than a mere naked authority to sell and convey the testator's real estate. They were especially invested with power to make settlement with the partners of the testator, and with each of them, of all matters pertaining to the partnership business, and to adjust, settle and compromise all debts, claims or demands against the estate of the testator according to their best judgment, and in addition to the foregoing power, they were authorized at their discretion to sell and convey the testator's real

estate. Regarding the partnership assets, although consist-
ing of lands, as personalty, the power conferred by the
fourth clause of the will to make settlement of the partner-
ship affairs invested the executors with ample authority in
case it became expedient or necessary in the course of the
settlement to transfer property to the surviving partner, to
make such transfer. *Ludlow* v. *Cooper, supra.*

Moreover, the power contained in the fifth clause must be
construed in connection with the duties imposed upon the
executors by the fourth clause of the will. It will be ob-
served that the executors are directed to sell and convey so
much of the testator's real estate as they shall deem neces-
sary to *pay and satisfy* his debts. Construing both clauses
of the will together, it becomes apparent that the exec-
utors had authority to make any proper settlement which,
in their discretion, seemed fit and best.

(2). A settlement and final accounting with the surviving
partner of the partnership matters having been actually con-
summated by the executors, who were duly empowered to
that end, a court of equity will not disturb the settlement so
made until it is impeached as fraudulent, or unfair; or un-
less collusion between the executors and surviving partner
is shown. Nothing less than fraud or collusion will invali-
date an arrangement between an executor and a surviving
partner, whereby the latter became the purchaser of the de-
ceased partner's share. *Travis* v. *Milne,* 9 Hare, 141 ; *Da-
vies* v. *Davies,* 2 Keen, 534 ; *Chambers* v. *Howell, supra ;
Stainton* v. *The Carron Co.,* 18 Beav. 146 ; *Smith* v. *Everett,*
27 Beav. 446 ; 2 Lindley Part. (Rapalje's Ed.) 487.

As has been seen, there is no pretence of any fraud or col-
lusion in the present case.

Finally, after the settlement and accounting between the
executors and the surviving partner has been had, and the
account closed, as appears to have been the fact in the pres-
ent case, a court of equity will not, after this long acquies-
cence unexplained by circumstances, decree the opening up

of the account, even though it appeared that the settlement had been irregularly made.

It is the settled doctrine of courts of equity that unexplained delay in the prosecution of a right until it becomes stale constitutes such laches as forbid the interference of the court. *Smith* v. *Thompson,* 7 Gratt. 112 (54 Am. Dec. 126, and note) ; *Hough* v. *Coughlan,* 41 Ill. 131 ; 2 Story Eq. Jur., section 1520. Here, as we have seen, there is an unexplained delay of fourteen years. The statute of limitations would have barred an action between the partners themselves, in case the settlement had been made by them.

After this lapse of time a presumption of innocence and fair dealing arises, and removes every inference, or imputation, of bad faith from the transaction, and the settlement must repose as the parties made it. *Prevost* v. *Gratz,* 6 Wheat. 481 ; *Rochester* v. *Levering, supra.*

The judgment is affirmed, with costs.

Filed March 22, 1890.