John L. **GRAHAM**, as Executor under the Last Will and Testament of Joseph P. Stratton, deceased, in probate proceedings in the County Judge's Court in and for Brevard County, State of Florida, Plaintiff-Appellant,

v.

Paul C. **STRATTON**, Defendant-Appellee.

No. 14731.

United States Court of Appeals
Seventh Circuit.

Dec. 29, 1964.

---

1. The counts allege violations of 18 U.S.C.A. § 152.

Benjamin G. Cox, Terre Haute, Ind., and L. C. Crofton, Titusville, Fla., Crofton, Brewer & Holland, Titusville, Fla., Gambill, Cox, Zwerner, Gambill & Sullivan, Terre Haute, Ind., on the brief, for appellant.

Thomas M. Patrick, Terre Haute, Ind., Floyd E. Dix, Terre Haute, Ind., Dix, Dix, Patrick & Ratcliffe, Terre Haute, Ind., on the brief, for appellee.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

The plaintiff-appellant, John L. Graham, executor of the estate of Joseph P. Stratton, deceased, brought this diversity action in the District Court against the defendant-appellee, Paul C. Stratton, for an accounting with respect to the sale of a small loan business and for recovery of such amount as might be found due plaintiff upon the accounting. The cause was submitted on stipulated evidence as to certain of the facts, the authenticity of documents, and summaries of the testimony witnesses would give. The trial court after making and entering findings of fact and conclusions of law entered judgment for the defendant. The plaintiff appealed.

At the time of his death on December 9, 1961, plaintiff's decedent had been engaged continuously since April 1, 1957, in the operation of a small loan business at several locations in Indiana pursuant

to a partnership agreement with the defendant. The agreement provided the death of either partner would not operate to dissolve the partnership and the business might be continued by the survivor for a period not exceeding twelve months. During the continuance of operation by the survivor, the share of proceeds to which the deceased partner would have been entitled, if living, was to be paid to the personal representative of the estate of the deceased partner. The survivor was given an option to purchase the interest of the deceased partner within the twelve month period following his death for a cash price equal to the amount of its book value as of the date of death computed according to a fixed formula under which the reserve for collection losses was to be adjusted to reflect an amount equal to 2.2 percent of total receivables and no amount was to be included as representing value of good will.[1]

In March of 1962 defendant expressed to plaintiff his desire to exercise the option but stated he did not yet know how he would go about arranging the necessary financing but in all probability some credit would be involved. He requested plaintiff to obtain an order of the probate court of Brevard County, Florida, authorizing plaintiff to comply with the provisions of the partnership agreement relative to defendant's acquisition of decedent's interest. Plaintiff secured such order on June 25, 1962, authorizing compliance with the contractual obligations of the partnership agreement with reference to the option in event of its timely exercise.

On July 24, 1962, defendant mailed plaintiff a partnership check for $587,-240.92, the full option price computed according to the terms of the partnership agreement. On July 27, 1962, defendant mailed plaintiff a check for $11,-643.21, the amount due plaintiff for undrawn profits up to June 24, 1962, and advised that under the settlement defendant assumed all liabilities of the partnership business. Plaintiff received and accepted these payments and receipted for them as representing a final cash withdrawal in full of the investment account of the decedent in the partnership[2] and the undistributed profits accruing to the close of business on July 24, 1962, respectively.

---

1. Paragraph 8 of the partnership agreement provided:

"8. It is further agreed by all of said partners that the death of any of the partners shall not operate to dissolve this partnership but the business shall be carried on by the surviving partner until such time as a settlement may be made with the legal representatives of any deceased partner; that said legal representatives of such deceased partner shall have the right to inspect the books of account of said partnership but shall have no right of active control or interference in said business; that upon the death of any of the partners the Reserve for Collection Losses shall be adjusted to reflect an amount equal to 2.2 per cent of the total receivables as shown on the partnership balance sheet statement and the books shall thereupon be closed showing an amount in each partner's investment account usually referred to as book value without any amount whatsoever to be included as to the value of good will; that the surviving partner shall have an option to purchase the shares of the deceased partner, such option to be available for a period of 12 months following the death of any partner without any amount whatsoever to be included in the value of said partnership interest designated as the value of good will, for a cash price equal to the amount of the book value figure referred to above. In the event of the death of any of the partners during the continuance of the partnership, the business may be continued by the surviving partner for a period not exceeding 12 months and during the continuance of operation by the surviving partner, the share of the proceeds to which the deceased partner would have been entitled, if living, shall during such period be paid to the personal representative of the estate of such deceased partner."

2. It had been determined earlier to characterize the payment under the option to purchase as a cash withdrawal of decedent's partnership interest because of the parties' view as to tax consequences under the Indiana Gross Receipt Tax Law.

The defendant sold substantially all of the assets of the business to subsidiaries of Interstate Finance Corporation pursuant to agreements under which a sum aggregating $985,118.01 was received therefor. It is the circumstances surrounding this sale upon which the plaintiff predicates his contentions that the District Court erred in not granting the relief sought.

The plaintiff contends, in substance, that the court erred in not finding and concluding that (1) the proceeds of the sale to the Interstate group constitute an asset of the partnership that should have been taken into consideration in computing the book value price at which the option could be exercised or are proceeds of a dissolution and liquidation occurring prior to a purported sale of decedent's interest pursuant to the option and in which the plaintiff is entitled to share; and (2) the partnership contract option was conditioned upon acquisition of the decedent's partnership interest with a present intent and bona fide purpose on the part of the survivor to continue to operate the business and defendant had a fiduciary duty to disclose to plaintiff his dealings to sell the partnership business, the breach of which duty excuses plaintiff from being irrevocably bound by the settlement made.

We therefore turn to consideration of what the record discloses with respect to the sale of the business to the Interstate affiliates.

The evidence discloses, and the District Court found, in substance, that in June of 1962 the defendant sought a bank loan to secure funds to exercise the option to acquire decedent's interest in order that he might continue the operation of the business as a sole proprietorship but was advised that he would be loaned sufficient funds to exercise the option only if he could get a commitment from a responsible purchaser to buy the business at a price sufficient to repay the loan.

On or about July 23, 1962, the defendant and Interstate Finance Corporation executed a written letter of intent dated July 23, 1962, under the terms of which the defendant represented that he had the right to acquire the decedent's interest by exercise of the option within twelve months of decedent's death; that the executor of decedent's estate had been authorized by the probate court of Brevard County, Florida, to comply with pertinent provisions of the partnership agreement relative thereto and to execute and deliver all documents to conclude the transaction with the defendant, whereby, upon payment of the necessary monies to the plaintiff, the defendant would acquire all right, title and interest of the decedent in the partnership and would become the owner of all of its assets. The letter of intent further provided that upon such acquisition the defendant would execute an agreement to sell certain of the assets (substantially all) of the business to Interstate or its subsidiaries under terms, conditions and agreements set forth. These included personal warranties, indemnities and hold harmless agreements from defendant to the purchaser and a personal covenant of the defendant not to compete with the purchaser or any affiliate in certain designated Indiana counties for a period of three years from the closing date of the agreement to be executed. Interstate offered to purchase the assets on the conditions set forth at a purchase price of $997,500 subject to certain adjustments as of the date of closing.

On July 24, 1962, defendant exhibited the commitment to the bank and obtained a loan of $600,000 on a note signed in the partnership name. The proceeds were deposited in the partnership account and on the same date defendant mailed the check to the plaintiff in the amount of the option price computed in conformity with the terms of the partnership agreement. On July 30, 1962, defendant executed a contract in accord with the terms of the July 23, 1962, commitment, and on August 2, 1962, executed and delivered the necessary bills of sale consummating the same. The bank indebtedness was paid in full by application of

a portion of the adjusted purchase price which aggregated $985,118.01.

The defendant did not at any time advise the plaintiff of his dealings with the bank or Interstate or that he intended to sell the business. He made no representation, however, that he intended to continue operation of the business after acquisition of the decedent's interest.

■ We perceive nothing in the provisions of the partnership agreement, express or implied, or in the facts and circumstances involved, which raised any fiduciary duty in the defendant to apprise the plaintiff of his arrangements with either the bank or Interstate nor which served to condition his exercise of the option right to purchase the decedent's interest on the existence of a present intent and bona fide purpose to continue to operate the business. There is no evidence that there was fraud or overreaching in connection with the making of the partnership agreement and it operated equally as to all concerned. That it permitted whichever partner who survived to purchase the deceased partner's interest on stated terms and conditions which resulted in a right to effect such purchase for a sum less than actual value of the interest does not subject such agreement to attack as a breach of the relation of trust and confidence which exists between partners. In re Randall's Estate, 29 Wash.2d 447, 188 P.2d 71, 77.

Neither Valentine v. Wysor, 123 Ind. 47, 23 N.E. 1076, 7 L.R.A. 788 nor Moorman v. Moorman, 226 Ind. 192, 79 N.E.2d 112, 397, cited and relied upon by plaintiff, is apposite here. Valentine did not involve a partnership contract providing a fixed formula for determining the option price, and in Moorman the formula had not been followed.

The non-disclosures of which plaintiff complains involved matters in which he had no legitimate concern and in no manner affected the computation of the option price.

■ Plaintiff's contention that the proceeds realized on the sale of the business to the Interstate group constituted a partnership asset which should have been reflected in the computation of book value in determining the option price is based on the fact that the July 23, 1962 commitment of the defendant to make such a sale occurred one day before exercise of the option was consummated by payment of the option price to plaintiff. Plaintiff urges that therefore the commitment of Interstate to purchase was an asset of the partnership at the time the option was exercised the following day. This time sequence is also the basis of plaintiff's further argument that the commitment to sell effected a dissolution and liquidation of the partnership, prior to exercise of the option, in the proceeds of which plaintiff is entitled to share. But these contentions fail to recognize that the commitment to sell and the exercise of the option were parts of an integrated transaction, each element of which was conditioned upon the other. And, in any event, book value, for purposes of the option, was to be determined as of the time of decedent's death. The situation here falls within the rationale of Patrick v. Bowman, 149 U.S. 411, 13 S.Ct. 811, 866, 37 L.Ed. 790.

■ Plaintiff's argument that the receipts from the sale of the business are "proceeds" in which he is entitled to share under the provision relating to continuance of operation by the survivor during the allowable twelve month period following the death of the other partner requires, in our opinion, an unwarranted interpretation of the word "proceeds" in the particular context in which it is used. We believe it abundantly clear the agreement did not contemplate that the personal representative of a deceased partner share in "proceeds" arising from the business or from its sale at a time subsequent to the payment of the option price. The meaning of "proceeds" in this context must therefore be restricted to "profits" accruing during the period of continued operation of the business.

From our examination of the record we find no basis for concluding that any material factual finding of the District

Court is clearly erroneous and we are convinced the court's conclusions represent the application of correct legal criteria. The judgment order of the District Court is therefore affirmed.

Affirmed.