S. Samuel Di Falco, S.
In this accounting proceeding objections were filed in behalf of the decedent’s only son, the residuary legatee under his will. The objectant is the guardian of the infant’s property. The infant is now age 20.
The guardian of the property, the infant’s mother, is a divorced wife of the decedent. The buyer beneficiary under the *377 buy and sell agreement is a sister of the decedent who along with her husband are coexecutors of the will. The sister is also the legatee named in the clause making a gift of the art objects.
Questions are raised as to the sale by the executors of the decedent’s interest in a close corporation pursuant to a buy and sell agreement; and as to the distribution of art objects pursuant to the language of the will. The buy and sell agreement is dated February 18, 1966 and parties thereto are the decedent, his sister and Borchard Affiliations Inc., the corporation involved. In the event of death the agreement provides for the sale of a decedent’s corporate stock for a price as stipulated as provided in ‘‘ Exhibit A” annexed to the agreement. As to the price, the agreement provides: ‘‘ Pursuant to section IV of this agreement the undersigned mutually agree that the value of each share of the Corporation Stock is Four Hundred and Fifty ($450.00) Dollars per share and that unless and until changed by an endorsement on this exhibit A and/or its supplements, shall remain so.”
Section IV of the agreement provides as to the price:
“ Unless and until changed, as hereinafter provided, the value of each share of the Corporation stock is and shall be that reflected in ‘ Exhibit A ’ hereto annexed.” (Par. 9.)
“ The Stockholders and the Corporation agree that said price reflects, and any changes will reflect the fair value of the Corporation stock, including the good-will of the Corporation and all of its assets.” (Par. 10.)
“ The value of the Corporation’s assets (including good-will) and of its stock, shall, during the lifetime of the Stockholders, be redetermined, within 60 days following the end of each fiscal year. Failing such redetermination, the values theretofore certified shall govern.” (Par. 11.)
1 ‘ The changed values upon which the parties may from time to time hereafter agree shall be endorsed upon ‘ Exhibit A ’ annexed hereto, and/or its supplements, as follows(Par. 12).
All parties waived a hearing. The record before the court indicates that, as of the date of death of decedent, Exhibit A annexed to the agreement valued each share of the corporation’s stock at $450 per share and that thereafter these values were never redetermined by the parties.
Particularly significant is the language of the agreement that “ unless and until changed by an endorsement on this exhibit A and/or its supplements, shall remain so ”. This agreement in writing could only be changed by an endorsement and the *378 agreement specifically provided ‘ ‘ failing such redetermination the values theretofore certified shall govern ”.
The guardian’s position is that the executor sold the stock at a price substantially below its fair value and that the agreement is ambiguous, making it unclear at what price the parties intended the stock to be sold. The guardian further argues because the executor was in a position of self-dealing that approval of the court was required prior to the sale.
That this contract is valid and enforceable is indisputable. The buy and sell agreement is binding. The price was fixed. The executors had no choice but to honor the agreement. This agreement, while it inured to the benefit of decedent’s sister, might very well have resulted in benefit to the decedent had he survived. (Matter of Sherman, 9 Misc 2d 731, affd. 279 App. Div. 981; Matter of Eddy, 175 Misc. 1011, affd. 262 App. Div. 1015, affd. 290 N. Y. 677; Matter of Galewitz, 3 A D 2d 280, affd. 5 N Y 2d 721.)
Arising from the sale of shares of stock of the close corporation and the lesser valuation by the parties (pursuant to agreement) is a question as to the imposition of the burden of estate tax on the increase in price as assessed by the Federal taxing authorities.
A balance sheet drawn at approximately the date of death indicated that the stock had an actual value of $3,151,734. The Federal Government took the position that it was not bound by the value fixed in the buy and sell agreement and the executors compromised with the Government at a valuation of $428,974 above the $2,250,000 paid pursuant to the buy and sell agreement.
The guardian of the infant proposes that the imposition of estate taxor: in the sum of $275,000 plus interest on the higher valuation should, according to Matter of Galewitz (supra), be imposed upon the sister who had the benefit of the reduced price called for in the buy and sell agreement.
In Matter of Galewitz, the court ruled that pursuant to section 124 of the Decedent Estate Law (now EPTL 2-1.8), in the absence of provision in the will or other instrument to the contrary, apportionment of taxes would be imposed on the transferees from the estate. At page 291 of Matter of Galewitz the court expressly said: 1 ‘ The statute, in the absence of provision in the will or other instrument to the contrary, directs apportionment of estate taxes on transferees from the estate,” (Italics supplied.)
*379 In the instant case there is a very explicit direction against apportionment of estate taxes. This testator said: “I direct that my Executors herein named pay all Federal, State and other estate and inheritance taxes solely out of my residuary estate, and that no part of such taxes shall be apportioned to or charged against any of the gifts, bequests, devises or legacies, other than the trusts created out of said residuary estate, contained in this Will, or against the devisees or legatees therein named, or against the proceeds or the beneficiary of any life insurance policy, or against any property or rights or the owner of any property >or rights which may be included in my gross taxable estate for estate or inheritance tax purposes.” (Italics supplied.)
The broad language of this clause covers the benefit obtained by the sister under the buy and sell agreement. It is my ruling that the estate taxes were properly apportioned, in this accounting, against the residuary estate as to the increase in valuation over and above the price of $2,250,000.
The last question raised by the objections of the guardian relates to the decedent !s bequest to his sister, in his second codicil, of his “ art objects ”, That legacy is expressed in the following language: “ 4b. I hereby give and bequeath to my sister Evelyn Metzger, absolutely and forever, all of my household furniture, art objects and jewelry, and any interest which I may have in any of them. ’ ’ The words ‘1 and any interest which I may have in any of them ’ ’ must be read together with the language contained in the first codicil wherein the decedent bequeathed a painting by a master of the Dutch school in the following language: “4a. I hereby give and bequeath to Cornell University, at Ithaca, New York, all of such right, title and interest as, at the time of my death, I may have, in a painting by Meindert Hobbema (1638-1709), Dutch School, known as ‘ The Old Mansion on a Canal ’, of which I now own 50% — my ■sister, Evelyn Metzger, 30%, and said Cornell University, at Ithaca, New York, 20%. ”
The record indicates that the decedent owned no other art objects than these, listed by him in a schedule of “ fine arts ” in a policy of insurance marked in evidence as Exhibit 5. It cannot be said that, in the context used by this testator, the term “art objects ” was intended by him to include miscellaneous bric-a-broc only. The court reads this codicil as conveying to the sister the valuable paintings owned by the testator.
The foregoing serves to dispose of the objections to this account. A decree may be submitted on notice, settling the account and fixing fees as requested.