**In the Matter of the ESTATE of Frank M. DILLON, Sr., Deceased.**

**W. J. DILLON, Jr., Appellee,**

**v.**

**Frank M. DILLON, Jr., Appellant.**

**No. 49538.**

Court of Appeals of Oklahoma, Division No. 1.

Nov. 29, 1977.

Released for Publication by Order of Court of Appeals Jan. 12, 1978.

Michael G. Smith, Ada, for appellee.

Bowman & Pittman by Robert W. Pittman, Oklahoma City, for appellant.

BOX, Judge:

An interlocutory probate appeal from the trial court's order confirming the sale allowing the executor of the estate of Frank M. Dillon, Sr., deceased, to purchase the estate's interest in a general partnership, a limited partnership and a corporation pursuant to the terms of three buy-sell agreements executed during the decedent's lifetime between the deceased and his executor.

Two brothers, W. J. Dillon, Jr. (who will be referred to as appellee) and Frank M. Dillon, sr. took over on their father's death a department store which they operated as a general partnership, the W. J. Dillon Company. In 1972, they established a shopping center using a limited partnership as the business entity, Arlington Center, Ltd., with a corporation as general partner, Ada Shopping Center, Inc. Each brother owned 50% of the outstanding shares in the corporation. The corporation owned a 2.4% interest in the limited partnership with each brother being a limited partner holding a 48.8% interest therein.

The brothers entered into three buy-sell agreements in respect to their interest in the three business entities. The agreements as to the W. J. Dillon Company and Arlington Center, Ltd., provided for the interests of the deceased partner to be purchased by the surviving partner at the

amount at which such share was valued in the last balance sheet and profit and loss statement prepared prior to the deceased partner's death. The buy-sell agreement as to Ada Shopping Center, Inc. provided for the corporation to buy the deceased shareholder's share for one dollar per share.

Frank M. Dillon, Sr. died testate on July 23, 1975. His will was duly admitted to probate in Pontotoc County. The pertinent terms of the will provided for the residue of the estate to go to Frank M. Dillon, Jr., appellant and testator's son, and appointed appellee the executor. Pursuant to the buy-sell agreements, appellee exercised his options to purchase the interests of the decedent at the price provided for in the agreements. Appellant filed objections to the confirmation of the sale. At the hearing on Return of Sale, however, the trial court confirmed the sale of the partnership, limited partnership and corporate interests of the decedent to appellee. The sale price of $17,933.37 was approved for decedent's interest in Arlington Center, Ltd., $156,-857.24 for W. J. Dillon Company, and $7,563.93 for decedent's stock in Ada Shopping Center, Inc. notwithstanding the agreement provided for only one dollar per share. (Appellee voluntarily offered more than the dollar per share.) The Honorable Ronald L. Jones entered a certificate of the trial judge authorizing an interlocutory probate appeal as to the confirmation of the sales.

## I.

In addition to being the surviving partner under the buy-sell agreements, appellee was also named executor of the estate. Appellant claims 58 O.S.1971, § 496 prohibits the sale to appellee. That statute provides no executor directly or indirectly may purchase estate property or be interested in the sale. This court is unable to find any Oklahoma cases directly on point. However, in *Lanie v. Lanie,* Okl., 499 P.2d 401, the executor was granted an option to purchase some of the decedent's land in the will. The Oklahoma Supreme Court held that Section 496 was not a bar to the executor's exercise of the option to purchase granted to him in the will. In the *Matter of the Estate of Gaylord,* 552 P.2d 392, concerned a right of first refusal in favor of OPUBCO. The executor was president and director of OPUBCO and one of the trustees of the voting trust voting 68.29% of the outstanding stock. The Supreme Court confirmed the sale of the stock to OPUBCO over objections that Section 496 prohibited the sale. The Supreme Court noted that Oklahoma case law created exceptions to Section 496 and further stated on page 395:

We find ourselves in the position, if we are to uphold the trial court of creating an additional exception to § 496. This exception would be based on contractual requirements imposed on the stock at the time of its acquisition. The death of a party does not extinguish a contract unless it is one for personal services. (Citation omitted.) Thus Executor is bound by the restrictions impressed on the stock and can operate only within their limitations.

■ The sale in the controversy at hand was also authorized by contract, the buy-sell agreements. In a similar factual situation, the Supreme Court of Georgia in *Bloodworth v. Bloodworth*, 224 Ga. 717, 164 S.E.2d 823 (1968) held:

Syllabus by the Court

Where a partnership agreement obligates the representative of a deceased partner to convey his interest in the partnership to the surviving partners for named considerations, and thereafter one partner executes his will naming two of his brothers and partners as executors, such executors after qualification are not self-dealing or unfaithful to their trust as executors when they convey to themselves the interest of the deceased partner for the consideration fixed in the partnership agreement; and such conveyances are valid. . . .

The *Bloodworth* case further held at 164 S.E.2d 825–26 that this factual setting "would be an approved exception to the rule forbidding a trustee to purchase at his sale of trust property for his own benefit."

See also *Keyes v. Hurlbert,* 43 Cal.App.2d 497, 111 P.2d 447 (Dist. Ct. App., 4th Dist. 1941). We therefore hold that the sale to appellee pursuant to the buy-sell agreements was not prohibited by 58 O.S.1971, § 496.

## II.

■ Appellant contends that 15 O.S.1971, § 158 requires the three buy-sell agreements be construed together. Section 158 provides:

Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.

The three buy-sell agreements dealt with three different business entities. Each of the buy-sell agreements were complete integrated contracts. No reference in one is made to another buy-sell agreement. We do not feel that the agreements related to the same matters nor were made as part of substantially one transaction within the purview of Section 158. Therefore, the construction of each agreement will be determined apart from the others.

Appellant contends a condition precedent for determining consideration was present in each of the buy-sell agreements which was not performed; therefore, the decedent's interests in the three business entities can not be sold for less than market value. The precise issue of the existence of conditions precedent was not raised in the trial court. Ordinarily, this Court would not consider such an issue. Inasmuch as this is an interlocutory probate appeal and the existence or nonexistence of conditions precedent is an essential preliminary question to the enforcement of any contract, we will proceed to answer this contention. It should be noted that the attorney for appellant on appeal was not the trial counsel. Each of the three buy-sell agreements will be discussed separately to determine if they contain conditions precedent.

### A. The W. J. Dillon Company.

The buy-sell agreement for decedent's partnership interest provided, in part:

## XIV.

SURVIVOR TO PURCHASE SHARE OF DECEASED PARTNER: If either partner should die during the continuance of the partnership business, the survivor shall purchase the share of the deceased partner in the capital assets of the business on the following terms:

1.) The purchase price shall be the amount at which such share shall stand in the *last balance sheet and profit-and-loss statement prepared prior to the death of the deceased partner,* plus the decedent's share in any undistributed, accumulated profits as of the date of his death; (Emphasis added.)

. . . . .

The condition precedent alleged to be present by appellant reads:

## X.

ANNUAL ACCOUNT AND DIVISION OF PROFITS: On the 31st day of January, 1973, and on the 31st day of January of each and every succeeding year during the continuance of the partnership, an account shall be taken by an accountant to be agreed upon by the partners of all of the capital, assets, and liabilities of the partnership business as of that date, and a balance sheet and a profit-and-loss statement making due allowance for depreciation and for recouping any lost capital shall be prepared by such accountant, and a copy thereof furnished to each of the partners, who shall be bound thereby, unless some manifest error shall be discovered within thirty (30) days, in which case such error shall be rectified. *Immediately after the preparation of the said balance sheet and profit-and-loss statement, the net profit,* if any, shown by such account, *shall be divided and distributed equally between the partners.* (Emphasis added.)

■ A condition precedent of a contract is one calling for the performance of some act or happening of some event after the contract is entered into, upon which its obligations are made to depend. *Rollins v. Rayhill,* 200 Okl. 192, 191 P.2d 934; *North-*

*western Nat'l Life Ins. Co. v. Ward,* 56 Okl. 188, 155 P. 524. However, a construction which will make a contract dependent on future contingencies is not favored and courts will not construe contract stipulations as conditions precedent unless required to do so by the plain, unambiguous language of the contract. *Kasishke v. Baker,* 146 F.2d 113 (10th Cir. Ct. of App. 1944), cert. denied, 325 U.S. 856, 65 S.Ct. 1185, 89 L.Ed. 1976 (1945); *Southern Surety Co. v. MacMillan Co.,* 58 F.2d 541 (10th Cir. Ct. of App. 1932), cert. denied, 287 U.S. 617, 53 S.Ct. 18, 77 L.Ed. 536 (1932).

■ The buy-sell agreement is not made to depend upon the annual accounting specified in paragraph X of the partnership agreement. The buy-sell agreement merely states the purchase price will be determined from the last balance sheet and profit and loss statement *prepared prior to the death* of the deceased partner. The parties, if they so desired, could have easily conditioned the buy-sell agreement on having the annual accounting made as per paragraph X. They did not choose to do so but rather relied on the last one prepared prior to death. This court believes paragraph X was a mere contractual stipulation to provide a basis for distribution of profits and was not made a condition precedent by the plain language of the contract.

Assuming arguendo that paragraph X was a condition precedent, the record before this court indicates it would have been complied with. Decedent passed away in July, 1975. The annual accounting in the record is dated January 31, 1975. This would have complied with paragraph X and would also have been the last one prepared prior to death. The testimony of Marcus R. Griffin, CPA, that the balance sheet of Arlington Center, Ltd. was prepared after the death of decedent did not discredit the balance sheet of the W. J. Dillon Company. No such testimony exists in the record before this court. In addition, the *only* balance sheet of the W. J. Dillon Company contained within the record is the one date January 31, 1975.

### B. Arlington Center, Ltd.

■ Arlington Center, Ltd. is a limited partnership. The buy-sell agreement was a separate document from the articles of the limited partnership. The articles were not introduced into evidence in the trial court and the condition precedent to the buy-sell agreement argued by appellant is allegedly contained within the articles. There exists no conditions precedent in the Arlington Center, Ltd. buy-sell agreement in the record before this court. An appeal is concerned with, and limited to, the record made of the trial under review, and the appellate court can not consider matters unless they were properly brought into the record under review. *In re Hess' Estate,* Okl., 379 P.2d 851; see also *McCall v. Duff,* Okl., 385 P.2d 916.

### C. Ada Shopping Center, Inc.

The shareholders agreement for this corporation provided that upon the death of one of the shareholders, the personal representative would sell within thirty days after qualification as such and the corporation would buy all shares owned by the deceased at the time of death. The purchase price would be as provided for in Article One. Appellant contends Article One is a condition precedent for the sale. Article One provides, in part:

> The parties hereto agree that as of the date hereof each share of stock of the Corporation shall be considered to have a value of $1.00. It is the intention of the parties to revise this figure on an annual basis. The purchase price shall be determined with reference to the last balance sheet and profit and loss statement prepared at the end of the fiscal year of the Corporation. The revision of this figure shall appear in the form of an addendum to this Shareholders' Agreement which shall be changed annually with the revision of the value of the stock. *The last figure agreed upon in writing by the parties hereto and attached to this Shareholders' Agreement as an addendum prior to an inter-vivos offer as set forth hereinabove, or before the death of one of the*

*shareholders, shall be conclusive as to the value of said block of stock for purposes of this agreement.* (Emphasis added.)

■ Under the authorities set forth, supra, Article One would be considered a contract stipulation, not a condition precedent. And although Article One does provide for an annual revision of the stock value, we are of the opinion that the italicized portion qualifies Article One in relation to the buy-sell agreement. The last figure agreed upon in writing and attached to the shareholder's agreement before one of the shareholder's death was to be conclusive. No revisions of the one dollar figure were agreed upon by the parties; therefore, the original one dollar figure controlled.

Furthermore *In re Estate of Borchard,* 74 Misc.2d 376, 346 N.Y.S.2d 620 (1973) dealt with a shareholder's buy-sell agreement whereby the value of the stock was to be redetermined every year. Failing such redetermination, the stated values would govern. The stock had greatly increased in value and the sale was challenged. The court upheld the sale and stated at 346 N.Y.S.2d 622:

> That this contract is valid and enforceable is indisputable. The Buy and Sell Agreement is binding. The price was fixed. The executors had no choice but to honor the agreement. This agreement, while it inured to the benefit of decedent's sister, might very well have resulted in benefit to the decedent had he survived. (Citations omitted.)

It should be noted that appellee voluntarily offered more than the one dollar per share as he was obligated to do under the terms of the contract. Appellee does not complain of this and the confirmation of the sale by the trial court for more than the contract price will not be disturbed on appeal.

### III.

Appellant complains that the price paid for decedent's interest in the three business entities pursuant to the terms of the buy-sell agreements does not equal the fair market value. The trial judge held:

The Court specifically finds that the true market value of the decedent's interest in the three business entities, the sale of which is hereby confirmed, may or may not be the same as the value thereof as established by the balance sheet and profit-and-loss statement last prepared prior to the decedent's death, or may or may not be the same as that price offered by Ada Shopping Center, Inc., for the decedent's interest in that corporation. The Court makes no finding of fact as to what the true market value or fair market value of the decedent's interests in the three business entities is. The Court specifically finds and orders that fair market value was not agreed upon by the parties as the purchase price to be paid. The Court further finds that the decedent had in his possession the balance sheet with respect to Arlington Center, Ltd. dated December 31, 1973, prior to his death. The Court finds that fair market value of the interest of the decedent in the three business entities is not a proper consideration for the Court. The Court finds that "balance sheet" and "profit-and-loss statement" are terms which are well-defined and well-understood and there has been no evidence introduced to show that the decedent did not know the significance of computing the value of his interest in the business entities based on historical balance sheets and profit-and-loss statements.

We totally agree with this finding of the trial court.

■ Buy-sell agreements are valid, in the absence of fraud or overreaching, although the purchase price agreed upon is less or more than the actual value of the interests at the time of death. As stated by the Washington Supreme Court in *In re Randall's Estate,* 29 Wash.2d 447, 188 P.2d 71, 77 (1947):

> Partners have the right, in the absence of fraud or overreaching, to make a valid and binding contract among themselves for the purchase, by the remaining partners, of the interest of a deceased or withdrawing partner. In the absence of

fraud, the fact that they may have agreed that such an interest may be purchased for a sum less (or more) than the actual value of the interest, at some subsequent date, does not render the partnership contract subject to attack merely because the interest of the deceased or withdrawing partner, at the time of his death or withdrawal, may be worth more than the amount which the partners agreed should be the purchase price thereof.

As to partnership buy-sell agreements, see also *Graham v. Stratton,* 339 F.2d 1004 (7th Cir. Ct. of App. 1964); *Pailthorpe v. Tallman,* 72 N.Y.S.2d 784 (Sup.Ct., Monroe County, 1947); 60 Am.Jur.2d Partnership § 254 (1972). In regard to corporate agreements, see *Northern Lumber Co. v. White,* 250 Iowa 801, 96 N.W.2d 463 (1959); *In re*

*Mather's Estate,* 410 Pa. 361, 189 A.2d 586 (1963).

The trial court's confirmation of the sale to appellee of the decedent's interests in the W. J. Dillon Company, Arlington Center, Ltd. and Ada Shopping Center, Inc. pursuant to the terms of the three buy-sell agreements is accordingly affirmed.

AFFIRMED.

REYNOLDS, P. J., and ROMANG, J., concur.