Sue GRIFFIN, Appellant,

v.

LANDSAW FURNITURE COMPANY, INC., Appellee.

No. 54971.

Court of Appeals of Oklahoma, Division No. 2.

July 21, 1981.

Rehearing Denied Sept. 2, 1981.

Certiorari Denied Oct. 29, 1981.

Released for Publication by Order of Court of Appeals Nov. 5, 1981.

Joe Farnan, Purcell, for appellant.

Gary C. Rawlinson, Luttrell, Pendarvis & Rawlinson, Norman, for appellee.

BOYDSTON, Judge.

Appeal is from $1,086.93 judgment in favor of employer against commission sales employee who quit her job and then refused to repay employer money advanced against future sales commissions. Both sides waived jury trial and case was tried to the court.

Plaintiff, Sue Griffin (Employee), sued her former employer, Landsaw Furniture Company, Inc., (Employer) to recover $1,463.07 in sales commissions earned before she quit. Employer cross-petitioned claiming it was entitled to a set-off against the earned commissions because she owed Employer a net $1,086.93 out of $2,550 it had advanced her. Employee contends the written contract does not require repayment unless she earned more than $750 per month. She further argues, since she quit her job she was not obligated to repay the advances and was entitled to her commissions. Trial judge held for Employer and this appeal resulted.

I

Employee was recruited out of college and hired to work as a straight commission salesperson at Employer's store in Norman, Oklahoma, on May 22, 1978. She quit the job in December, 1978. At time of employment, parties agreed to a contract which provided she had the option to draw $750 per month for three months to be repaid as follows:

I have the option for a draw up to a total of $750 for the first 3 months to be balanced out at the end of that time, if Landsaw's owes me it will be paid back immediately, if I owe Landsaw's it will be paid back when my month earnings are above $750 and will not exceed $200 unless I desire to.

Employee drew the maximum advance of $750 per month over the next three months. She also drew an additional $300 and, therefore, owed Employer $2,550 at the end of that time. Unfortunately, she never earned more than $750 per month for the remainder of her employment. In December, Bob Landsaw, Jr., president of the company, withheld her commission check when she refused to sign a note to cover the past advances. She told him to "stick it!" and quit. He applied her commission check as a credit against the draw account. Later commissions, payable when the furniture was delivered, were likewise applied to the account over the next few months as they accrued. After all her commissions had been applied to the account, the difference between the earned commissions and the draw account amounted to a $1,086.93 deficiency in favor of Employer. The court denied Employee's petition and awarded this sum to Employer on its cross-petition.

II

Employee raises a single claim of error on appeal, urging the contract of employment contains a condition precedent, i. e., that Employee must earn more than $750 per month before she is obligated to repay the advance. She cites *Matter of Dillon's Estate*, Okl.App., 575 P.2d 127 (1977), and *Northwestern National Life Ins. Co. v. Ward*, 56 Okl. 188, 155 P. 524 (1916). These cases stand for the proposition that a condition precedent in a contract is one which calls for the performance of an act or happening of an event after the contract is entered into, upon which its obligations are made to depend. We do not agree with Employee's logic nor do we see a connection between the legal principle cited and the facts of this case.

The problem with this contract is it simply fails to specifically cover the con-

tingency of Employee quitting before repaying the advances. In this circumstance, we find the only legal issue raised is the proper construction of the contract. In this case of legal cognizance, it is the duty of the appellate court to examine the record, and if there is competent evidence to support it, the judgment should be upheld. *Story v. Hefner*, Okl., 540 P.2d 562 (1975). Accordingly, we hold the court's ruling is correct.

The evidence is undisputed Employee was to receive no compensation other than sales commissions. Employee acknowledged in her testimony she knew the draw was a loan and she was obligated to repay it, but simply argues she was not obligated to repay after she quit. There is a basic assumption in the contract that she would earn more than $750 per month from her sales after she had become established. Unfortunately, this assumption was incorrect.

The advanced funds can only be construed to be either a gift (which has not been contended) or a loan. The contract provides a scheme for systematic repayment. It uses the term "draw," which is commonly used interchangeably with the term "advance." Each is an abbreviated way of saying "advance or draw against future earnings."

The fact that the contract stops short of providing a *method* or *time* of settling accounts where an employee quits without repayment does not change the character of the *obligation*. The legal effect of termination of employment was to accelerate and fix the time of payment. The court correctly ruled the *obligation* to repay was unaffected by her termination. Title 15 O.S.1971 § 173 provides where no time for performance is specified in a contract the court should allow a reasonable time for performance. Here, the only act to be performed was repayment. Section 173 also provides "if [the act] consists in the pay-

ment of money only, it must be performed immediately . . . ." In *Nations v. Stone*, 92 Okl. 18, 217 P. 1031 (1923), the supreme court held:

> If a debt in fact exists, which has all the essentials, except fixing a definite time of payment, or if payment is made to depend upon a contingency, which does not happen, the law requires payment to be made within a reasonable time.

We affirm judgment of trial court and tax costs of appeal against Employee.

BACON, P. J., concurs.

BRIGHTMIRE, J., dissents.

BRIGHTMIRE, Judge, dissenting.

I agree with the majority that the issue to be decided on this appeal is the proper construction of the employment contract. I cannot agree, however, that the trial court reached a correct result.

## I

Bob Landsaw, Jr., president of defendant corporation, drew up the employment contract the terms of which are used as a basis for defendant's cross-petition. It is an ambiguous, incomplete, nearly unintelligible agreement.[1] Under these circumstances, not only does the burden of proof rest with the defendant to prove its claim but it is faced with overcoming an immense legal hurdle, namely, the requirement that the contract's uncertainties must be strictly construed against it and interpreted in a manner most favorable to the employee. 15 O.S.1971 § 170. Moreover, parol evidence is admissible to explain the intent of the parties and, as we shall see, Landsaw's construction of the contract is at war with its claim.

As a preliminary matter, I take issue with the majority's statement that the word "draw" as used in subject contract is "commonly used interchangeably with" the word

---

1. The provision at issue reads:

   "I [plaintiff] have the option for a draw up to a total of $750.00 for the first 3 months to be balanced out at the end of that time, if Land-saw's owes me it will be paid immediately, if I owe Landsaw's it will be paid back when my month earnings are above $750.00 and will not exceed $200.00 unless I desire to."

"advance." While the word advance in an employment contract is used ordinarily to suggest a loan and in some rare instances to mean a gift, I can find no similar construction given to the word draw. Moreover, I also have difficulty with another assertion in the court's opinion—that use of either word is an abbreviated way of saying "advance or draw against future earnings." Advance suggests a source or manner of creating a fund, while draw connotes how the funds are obtained.[2]

## II

Going now to the substance of the appeal, I do not agree that the contract provision referred to by the majority imposed an obligation upon the employee to pay her employer for any of the funds she received during her first three months of employment. Basically, the contract's wording is quite meaningless. But if by injecting implications some sense can be made of it, I still cannot see any basis for reaching the conclusion that the employee owes the employer. Assuming an obligation to pay something is imposed on the employee by the contract, the only one I think that could possibly be read into it is with regard to funds she received in excess of $2,250, that is, $750 times three for the beginning three month period. Further, the contract seems to be saying that defendant has guaranteed the first three months payment and if the option to draw the funds is not exercised by the employee, the employer shall pay the undrawn balance immediately to the employee at the end of the three month period.

## III

Finally, and most importantly, is the construction placed on the contract by its scrivener, Bob Landsaw. He admitted that if plaintiff had continued working for the defendant and had not reached monthly commissions of $750, she would not be obligated to pay anything.[3] Thus Landsaw's itself placed an interpretation on the contract which imposed no obligation upon plaintiff. And this makes its president's further statement significant, namely, that the first time he actually told plaintiff she had to repay the first three months salary she received was on the day she quit. At trial he simply said he "assumed" she knew what interpretation he would put on the otherwise vague contract provision. Plaintiff, however, did not have such an understanding of the agreement, but said rather that she had considered the draw money to be a guarantee.

The conclusion I reach under these circumstances is that there was no competent evidence to which the trial judge could have anchored a construction that the contract imposed an absolute obligation on the employee to repay the first three months draw. The fact that she quit after the initial three month period could not have altered the contractual rights that existed at the expiration of the first three months. I would, therefore, reverse the judgment granting defendant's cross-petition, remand the cause with instructions to enter judgment for plaintiff for $1,463.07 in earned commissions, and deny defendant's prayer for relief.

2. At least when those words are used as verbs. I suppose people have been known to use both terms as nouns, i. e., "I want an advance." In such an event, advance means loan. If an employee should, however, say "I want a draw," one might be tempted to hand her a lit cigarette.

3. This admission came in the form of a negative answer to Interrogatory 10, which reads: "Had Sue Griffin's commissions never reached the $750.00 per month break-point as per the contract, and had she remained on as an employee, would she have ever had to repay the money that was advanced to her? If she would have eventually had to repay, when would she have had to pay, if she remained as an employee?"
It should be noted that defendant said plaintiff owed it $2,550 claiming she was paid an additional $300. Under the store's own interpretation of its contract, however, it would appear that even this amount is not owed to defendant because plaintiff never reached the $750 threshold in earned monthly commissions, therefore, her obligation to repay never arose.